836 P.2d 93

**Norman E. MICK, Petitioner–Appellant,**

v.

**Hazel J. MICK, Respondent–Appellee.**

No. 12842.

Court of Appeals of New Mexico.

May 28, 1992.

Certiorari Granted July 9, 1992.

Darrell N. Brantley, Alamogordo, for petitioner-appellant.

Jefferson R. Rhodes, Burroughs & Rhodes, Alamogordo, for respondent-appellee.

## OPINION

BIVINS, Judge.

This case is a domestic relations action involving the division of the parties' retirement benefits upon the dissolution of their marriage. Husband is presently retired and is receiving civil service retirement benefits. The trial court awarded each party half of Husband's retirement benefits. Although Wife's civil service retirement benefits have vested, Wife has not yet retired and at trial indicated that she had no present intention to retire. Husband contended at trial that the court should award him his portion of Wife's retirement benefits when Wife becomes eligible to retire even if Wife chooses to continue working. The trial court awarded Husband his interest in Wife's retirement benefits when Wife retires.

The sole issue in this appeal is whether the trial court erred in holding that Husband would not receive his interest in Wife's retirement benefits until Wife's retirement. This case is controlled by our recent decision in *Ruggles v. Ruggles*, 114 N.M. 63, 834 P.2d 940 (Ct.App.1992). In *Ruggles*, we held that "pay as it comes in" under *Schweitzer v. Burch*, 103 N.M. 612, 711 P.2d 889 (1985), means that pensions should be divided when actually received, not, as argued by Husband here, at the earliest date they could potentially be received. We therefore affirm the decision of the trial court.

Judge Donnelly's dissent makes a strong argument for immediate distribution to a non-employee spouse of his or her community interest in the employee-spouse's retirement benefits, which are vested and matured, when the employee-spouse postpones distribution of those benefits by electing to continue to work. This court in *Mattox v. Mattox*, 105 N.M. 479, 734 P.2d 259 (Ct.App.1987), was similarly disturbed by the inequity of allowing the employee-spouse to unilaterally delay payment of retirement benefits to the detriment of the other spouse. In that case, we relied on *In re Marriage of Gillmore*, 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981), to support immediate division of the retirement benefits. We were only able to reach that result because of the prospective application of *Schweitzer v. Burch*, 103 N.M. 612, 711 P.2d 889 (1985). *See Mattox*, 105 N.M. at 484 n. 3, 734 P.2d at 264 n. 3 (where we recognized the "pay as it comes in" method was now mandatory). *Mattox* slipped through just before the gate closed and should not be read as modifying *Schweitzer*. *See Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

While it may seem unfair to require the non-employee spouse to wait until the employee-spouse retires to receive his or her share of retirement benefits, there is a countervailing inequity, as Judge Donnelly notes in his discussion of *Schweitzer*, in granting to the non-employee spouse an amount that might not even be received if the employee-spouse dies before the benefits are paid out. Thus, it is easy to see two inequities which result in a "Hobson's Choice."

On the one hand, by delaying distribution until the employee-spouse retires, the non-employee spouse is deprived of his or her share of a community asset distributable in cases where the interest is vested and matured but for the employee-spouse's election to continue working. On the other hand, if the employee-spouse is required to pay the non-employee spouse his or her share of the then vested and matured but not yet received retirement benefits, or set aside property equal in value to that inter-

est, the employee-spouse also suffers a detriment. The longer the employee-spouse works, the less retirement benefits that spouse will receive. In other words, the value of the benefits decreases each day the employee-spouse continues to work beyond the date of eligibility. Similarly, the employee-spouse suffers a potential detriment if he or she dies before receiving the retirement benefits. In either case, that spouse will have paid the non-employee spouse his or her share of the benefits without receiving an equivalent share. Moreover, it is certainly conceivable that an employee-spouse could be forced into retirement in situations where the economics would not allow continuation of employment.

This approach finds support in cases dealing with division of other marital assets upon divorce. In *Cox v. Cox*, 108 N.M. 598, 775 P.2d 1315 (Ct.App.), *cert. denied*, 108 N.M. 624, 776 P.2d 846 (1989), this court found it more equitable to require a spouse to pay goodwill "in the future as and when it is actually received" rather than pay to his or her spouse a share of current value of the business. *Id.* 108 N.M. at 601, 775 P.2d at 1318. We reasoned that this approach "precludes having the professional spouse pay a lump sum at the time of the dissolution for goodwill which may never actually be received. It prevents a 'hypothetical forced sale' of the business." *Id.*

In addition, we believe that implicit in *Schweitzer* is the recognition that there is no way to achieve total fairness and a policy that favors people continuing to be productive citizens as long as they are able, even beyond retirement eligibility. This policy is consistent with legislation that disfavors job discrimination based on age. *See, e.g.,* NMSA 1978, § 28-1-7(A) (Repl.Pamp.1991).

For the reasons stated, we affirm the trial court.

IT IS SO ORDERED.

ALARID, C.J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (dissenting).

I dissent from the decision reached by the majority. In my view the majority misapplies *Schweitzer v. Burch*, 103 N.M. 612, 711 P.2d 889 (1985), and this court's decision in *Ruggles v. Ruggles*, 114 N.M. 63, 834 P.2d 940 (Ct.App.1992), to arrive at an inequitable result.

This case involves the issue of whether the district court erred in determining that an employee spouse can indefinitely delay payment of the non-employee spouse's interest in the retirement benefits, where the retirement plan was fully vested at the time of divorce and within a brief period following the divorce the employee spouse's retirement benefits fully matured.

At the time of divorce, Husband had previously retired from his civil service position and Wife was awarded one-half of Husband's retirement benefits. She is currently receiving these benefits from Husband's retirement plan. Wife, who is the same age as Husband, is employed at Holloman Air Force Base. She testified that her civil service retirement benefits have previously vested and she will be entitled to receive her full retirement benefits in May 1992. She testified, however, that she has no present intention to retire and has not determined when she will do so. The question thus presented is whether the district court erred in holding that Wife may unilaterally delay Husband's receipt of his interest in Wife's retirement benefits by continuing to work beyond her retirement eligibility date without paying Husband's share of the retirement benefits.

In *Schweitzer* the supreme court considered the issue of whether an heir of a deceased, divorced spouse had a right to the community share of the pension of the deceased's former spouse. The court in *Schweitzer* modified its prior holding in *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978), stating:

> We now modify *Copeland* prospectively to hold that upon dissolution of marriage, unless both parties agree otherwise, the trial court must divide community property retirement benefits on a "pay as it comes in" basis. We also hold that any

order dividing benefits on a "pay as it comes in" basis must be construed as terminating upon the death of either spouse, unless the amount contributed by the community has not yet been paid out in benefits. In that situation, the surviving spouse and the estate of the deceased spouse shall share any continuing payments until the non-employee spouse, or his or her estate, shall have received an amount equal to his or her proportionate share of the community contributions to the retirement plan.

103 N.M. at 615, 711 P.2d at 892.

The court's objective in *Schweitzer* was to "assure equity and fairness" because, by permitting lump-sum awards at the time of divorce, it "would grant to the non-employee spouse an amount that might not ever be received if either spouse died before the projected benefits had been paid out." *Id.* *Schweitzer* noted that under a lump-sum payment option of an employee spouse's retirement benefits, "[t]he inequality [is] compounded if the employee spouse died first, having received only a portion of his or her divided share but having paid the ex-spouse the present value of all his or her estimated lifetime share under the lump sum decree." *Id.*

I do not believe that the *Schweitzer* court, in fashioning a rule to achieve greater fairness and equity, intended to require strict adherence to the "pay as it comes in" rule in situations where the pension was vested at the time of divorce and has now fully matured. The end result of extending the decision in *Schweitzer* so as to unreasonably delay distribution of the community assets after the retirement plan has vested and matured, under the facts of the instant case, is itself contrary to equity and fairness. As Husband points out, the issue of whether an employee spouse should be permitted to control the timing of when the non-employee spouse may enjoy his or her share of a community asset was not before the *Schweitzer* court and was not directly addressed in that opinion.

In *Ruggles* the parties entered into a marital settlement agreement which sought to detail the parties' rights and obligations in their respective retirement benefits. The district court held that the provisions of the marital settlement agreement relating to disposition of the parties' retirement benefits were unambiguous and that in furtherance of the agreement the husband should begin making monthly payments to the wife of her share of his retirement benefits. On appeal, this court agreed with the district court that the marital settlement agreement was unambiguous, but determined that the agreement failed to specifically provide for the immediate payment to the wife of her share of the pension, and reversed the district court, stating, "We conclude that, in New Mexico, *unless the parties agree otherwise*, the trial court *must* reserve jurisdiction and divide any retirement benefits on a 'pay as it comes in' basis." *Ruggles v. Ruggles*, 114 N.M. at 68, 834 P.2d at 945. I believe that application of this court's decision in *Ruggles* to the facts of the instant case would extend *Schweitzer* beyond the manner intended by our supreme court.

Under the final decree of divorce in the present case, the district court determined that the retirement benefits should be divided between the parties; however, under the decree, Wife was permitted to indefinitely defer any payment to Husband of his interest in her vested retirement benefits beyond the maturity date of such pension and until she elects to retire. In *Mattox v. Mattox*, 105 N.M. 479, 734 P.2d 259 (Ct. App.1987), this court, relying in part upon the reasoning in *In re Marriage of Gillmore*, 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981), observed that an employee spouse should not unilaterally be permitted to defer the payment of retirement benefits when pension rights have fully vested and matured "so as to impair a non-employee spouse's interest in those retirement benefits." *Id.* 105 N.M. at 483, 734 P.2d at 263. *See also Koelsch v. Koelsch*, 148 Ariz. 176, 713 P.2d 1234 (1986) (en banc). The decision in *Mattox* was not affected by the "pay as it comes in" rule adopted in *Schweitzer*, since the ruling in *Schweitzer* was declared to only have prospective application.

As recognized in *Mattox,* when one spouse can unilaterally elect to defer payment of retirement benefits beyond the date the retirement benefits of the employee spouse have vested and actually matured, the result is that the non-employee spouse's financial interest in the retirement benefits decreases. *See also In re Marriage of Gillmore* (one spouse should not be permitted to determine whether to invoke a condition wholly within his control, so as to defeat receipt of the community interest of the other spouse); *In re Marriage of Shattuck,* 134 Cal.App.3d 683, 184 Cal.Rptr. 698 (1982) (value of vested pension fund is affected by the fact that an early death may preclude receipt of any pension payments at all).

Application of *Schweitzer* and *Ruggles* to the facts of this case appears inconsistent with long-standing rules governing the division of community property in New Mexico, which hold that requiring one spouse to wait indefinitely to receive his or her interest in a community asset is inequitable. *See Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983) (each spouse should have complete and immediate control over his or her share of the community property upon divorce); *Chrane v. Chrane,* 98 N.M. 471, 649 P.2d 1384 (1982) (net effect of permitting the wife to retain residence of parties until she remarries, dies or decides to sell it is to divest the husband of a portion of his equity in the property). The result herein also would appear to be contrary to legislative intent that community property should be divided between the parties at the time of divorce. *See* NMSA 1978, § 40–4–20 (Repl.Pamp.1989).

In *Hertz* our supreme court held that the district court abused its discretion in denying a spouse complete and immediate control over her share of the community interest because it did not require the husband to pay her in full and extended the husband's indebtedness to her for a period of at least ten years.

While I do not believe that Wife should be involuntarily forced to retire prior to the time she chooses to do so, neither should she be permitted to indefinitely postpone Husband's rights to enjoy his interest in her vested and matured retirement benefits. *See Koelsch v. Koelsch.* If Wife elects not to retire at the time her pension becomes fully vested and matured, she should not be required to do so; however, equity and fairness require that the district court fashion a flexible method to assure Husband of the right to enjoy his share of the community property without unreasonable delay. *See Hilburn v. Brodhead,* 79 N.M. 460, 444 P.2d 971 (1968) (court utilizing its equitable powers has power to meet the problem presented, and to fashion a proper remedy to accomplish a just and proper result). As observed by the court in *Gillmore:*

> [Husband's] claim that [if he had to pay his former spouse the amount of her share of the retirement benefits he would be] forced to retire misses the point. He is free to continue working. However, if he does so, he must reimburse [Wife] for the share of the community property that she loses as a result of that decision.

174 Cal.Rptr. at 495, 629 P.2d at 6.

Even under an extended reading of *Schweitzer,* fundamental fairness would seem to require that if Wife elects to postpone her retirement beyond a reasonable date following the full vesting and maturity of her retirement benefits, Husband should be awarded an appropriate amount of interest on his share of any postponed retirement benefits after the date Wife's retirement plan has fully vested and matured. *See Koelsch v. Koelsch* (court should properly provide for payment of interest on the postponed payments); *see also Chrane v. Chrane,* 98 N.M. at 472, 649 P.2d at 1385 (district court should direct that community residence be disposed of and net proceeds distributed within reasonable time or make such disposition as will result in parties receiving "within a reasonable time" his or her share of the value of the property). *See generally* NMSA 1978, § 56–8–4 (Repl.1986) (party awarded monetary judgment is entitled to interest as provided by statute). Alternatively, the district court could allow Husband to deduct or offset from the monthly

sum Wife currently receives from Husband's retirement plan, the monthly amount Husband would otherwise be entitled to receive under Wife's retirement plan after it vested and matured.

At the point Wife's retirement benefits became fully vested and matured, the interest of the non-employee spouse in Wife's retirement benefits is tantamount to money due on a matured account, and the non-employee spouse is deprived of the earning power of his or her share of the community asset if further delay in the distribution of the non-employee's interest in such retirement is judicially sanctioned.

I would reverse and remand with instructions to the district court to modify the final decree so as to direct that if Wife elects not to retire within a reasonable time after her pension has fully vested and matured, Husband should receive a monthly payment from Wife in an amount equal to his monthly share of any vested and matured retirement benefits in Wife's civil service pension, or the district court should fashion a remedy to permit Husband to enjoy all or a portion of the benefits to which he is entitled.